UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOHN W TAYLOR, IV, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:18-cv-00370-JPH-DLP |
| KEITH BUTTS, L. STORMS, S. SAYLOR, SGT. JOHNSON, | ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff John W. Taylor, an inmate at Wabash Valley Correctional Facility, filed this civil action against Nurse Melanie Johnson, L.P.N., Superintendent Keith Butts, Lt. Larry Storms, and Sgt. S. Saylor. The complaint alleges that on May 16, 2018,[1] Lt. Storms denied Mr. Taylor adequate toilet paper, Lt. Storms and Sgt. Saylor used excessive force against Mr. Taylor and that Nurse Johnson was deliberately indifferent to Mr. Taylor's serious medical needs after he was allegedly injured by custody staff. Most of the events at issue in this case were captured on video. No reasonable jury could view those videos and conclude that the officers used excessive force or that Nurse Johnson was deliberately indifferent when she did not immediately examine Mr. Taylor.

For the reasons explained further below, Nurse Johnson's motion for summary judgment, dkt. [70], and the custody defendants' motion for summary judgment, dkt. [76], are **granted.**

---

[1] Following Mr. Taylor's deposition, and after review of Mr. Taylor's medical records, it appears that the relevant date is May 16, 2018, because Mr. Taylor was no longer incarcerated at New Castle on May 26, 2018. Dkt. 71 at p. 2, fn. 1.

**Applicable Law**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

Pursuant to Federal Rules of Civil Procedure 56(c)(3) and Local Rule 56-1(e), the Court only considered the evidentiary materials cited by the parties in their summary judgment papers. *See Grant v. Trs. Of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009).

The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). However, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). In this case, the Court had the benefit of three video recordings of the events at issue.[2]

---

[2] Copies of videos were provided by Nurse Johnson, dkt. 75, the custody defendants, dkt. 86, and Mr. Taylor, dkt. 97. Mr. Taylor's exhibit at docket number 97 – labeled "supp video" on the DVD – provides all three recordings available in this case. The first recording is a 29 second video with sound from a handheld recorder. The second recording is of the range and covers the hallway between the shower and Cell 502. The second video is 39 minutes long and does not include any audio (hereinafter "Range

**Facts and Background**

Mr. Taylor was incarcerated at the New Castle Correctional Facility ("New Castle") on May 16, 2018. Dkt. 2 at p. 5. At that time, Defendant Larry Storms was employed by The GEO Group, Inc. ("GEO") at New Castle and he was familiar with Mr. Taylor. Dkt. 78-1 at ¶ 2–3. Defendant Keith Butts was the Warden of New Castle. Dkt. 2 at p. 1. Defendant S. Saylor was also working at New Castle on May 16, 2018 and had direct interaction with Mr. Taylor. Dkt. 1 at p. 1–4.

Inmates incarcerated at New Castle are provided one roll of toilet paper each week and the distribution of toilet paper occurs on a Wednesday or Thursday of the week. Dkt. 78-1 at ¶ 4.[3]

Mr. Taylor was in restrictive status housing in May of 2018, due to a prior conduct report received in January 2018 for assaulting correctional staff at New Castle. On January 17, 2018, Mr. Taylor assaulted Sgt. Lee after Sgt. Lee gave Mr. Taylor a direct order. *See id.* at ¶ 14; dkt. 78-6 (SIR Workbook, #031). Mr. Taylor punched Sgt. Lee in the head and face causing Sgt. Lee to suffer head trauma and a concussion. Mr. Taylor received a conduct report and sanctions as a result of his actions. Dkt. 78-1 at ¶ 14.

On April 18, 2018, Mr. Taylor was involved in another assault on staff incident at New Castle involving Officer Groce and Defendant Larry Storms, wherein Mr. Taylor knocked a food tray from the hands of Officer Groce and thereafter threw objects, at least one of which

---

Video"). The third video is also from the handheld camera. It is 19 minutes and 30 seconds long and includes audio (hereinafter "Handheld Video").

[3] The parties dispute whether Mr. Taylor was able to purchase additional toilet paper from commissary. Compare Deposition of Taylor, dkt. 99-4 at p. 18–19, and errata sheet at p. 29, with Affidavit of Larry Storms, dkt. 78-1 at ¶ 5. This dispute is not material to Mr. Taylor's Eighth Amendment conditions of confinement claim.

contained an unknown liquid, at or upon Officer Groce and Defendant Larry Storms. *See id.* at ¶ 15; dkt. 78-7 (SIR Workbook, #179).

On May 16, 2018, prior to the cuff port incident described below, Mr. Taylor assaulted Officer Mullins by throwing an unknown liquid substance on the officer while that officer was conducting range checks in Mr. Taylor's unit. Dkt. 78-1 at ¶ 17; dkt. 78-8 (SIR Workbook, #219).

Later, that same day, Mr. Taylor asked for more toilet paper and Lt. Storms refused to provide it. Mr. Taylor then "held [his] cuff port hostage" in an attempt to get a supervisor to speak with him. Dkt. 78-1 at ¶ 9; dkt. 78-9 (SIR Workbook, #220, reporting use of force at issue in this case). Mr. Taylor was ordered to release possession of his cuff port but did not. *Id.* Mr. Taylor testified, "I was asked on that occasion to remove my arm from the cuff port." Dkt. 78-10 (Deposition of Taylor, pg. 40). When asked if he complied with that request he responded, "I did not." *Id.*

New Castle staff then used Oleoresin Capsaicin ("OC") spray in Mr. Taylor's cell. Dkt. 72-1 at ¶ 4. The OC spray was administered by Sgt. Saylor at the direction of Lt. Storms to get Mr. Taylor to comply with verbal commands. *See* dkt. 78-1 at ¶ 9. The OC Spray was not administered directly upon Mr. Taylor and Mr. Taylor admits that the administration of the spray was "justifiable." Dkt. 78-10 at p. 41. Following the administration of the OC Spray, Mr. Taylor initially complied with correctional officers' requests to submit to restraints and begin the decontamination process. *See* dkt. 78-1 at ¶ 11.

4

Nurse Johnson asked Mr. Taylor various medical questions on May 16, 2018, prior to Mr. Taylor being provided a decontamination shower. Dkt. 72-5 at 19; Handheld Video at 6:13. Mr. Taylor refused to answer her. *Id.*

As Lt. Storms and Sgt. Saylor were preparing to put Mr. Taylor in the shower stall, Mr. Taylor repeatedly shouted, "fuck you, bitch", "fuck your mother", and similar phrases, while calling them "bitches" and "punk ass crackers." *See e.g.*, Handheld Video at 7:07–7:17. The officers did not react to Mr. Taylor's statements but proceeded to escort him to the shower stall so he could rinse off as part of the decontamination process.

While rinsing off, Mr. Taylor continued his verbal tirade and yelled, "This is just round one, bitch, you all might as well get some more of that shit" (referring to the OC spray). *See* Handheld Video at 8:22–8:29. Mr. Taylor then jerked his head back, spraying water on the officers and they told him to stop. *Id.* at 8:49. Mr. Taylor responded, "Fuck you, bitch!", and the officers removed him from the shower. *Id.* at 8:52. *See* Handheld Video at 8:22–8:54.

Mr. Taylor then physically resisted the officers. The Handheld Video shows the officers pushing Mr. Taylor against the wall as he threatened them exclaiming, "I'm going to beat you bitch." *Id.* at 9:17. The officers calmly restrained Mr. Taylor by pinning him against the wall in order to gain his compliance.

Mr. Taylor then starts to yell that a finger is poking his eye, but the officers' fingers clad in bright blue gloves are visible in the video and they are not poking Mr. Taylor in the eye. Handheld Video at 9:41. A few seconds later, Mr. Taylor states that he is being choked, the officer responds by stating that he is using his finger to put pressure on a pressure point. *Id.* at 9:51. The video reflects that the officer is using a finger to apply pressure to the side of

5

Mr. Taylor's neck. When the officers release Mr. Taylor to continue the very short walk to Cell 502, Mr. Taylor bends his knees and falls to the ground. *Id.* at 10:57. Multiple officers respond and restrain Mr. Taylor on the ground. Mr. Taylor testified that Sgt. Saylor slammed his knee down on his head and neck. The video reflects Mr. Taylor being physically restrained because he is threatening the officers and not complying with their instructions. Eventually he is carried to Cell 502.

Upon arriving at Cell 502, Mr. Taylor's wet, contaminated clothing needed to be removed. Dkt. 78-3 at p. 4. The handheld and range videos reflect that Mr. Taylor resisted having his clothing removed. Mr. Taylor states as Sgt. Saylor stripped him, Sgt. Saylor "grabbed his testicles." Dkt. 98 at p. 4. Both the Handheld Video and Range Video reflect that the officers struggled to remove Mr. Taylor's clothes and eventually used scissors to remove them.

In addition, Mr. Taylor asserts that "[t]he video from the range camera clearly shows the door closed on the plaintiff, this video also shows a custody officer use the door as a weapon and slam it on the plaintiff's feet & ankles. While the door was slammed on the plaintiff custody officers began kicking and stomping on the plaintiff while he laid on the ground in handcuffs." Dkt. 98 at p. 4, referencing video. The Range Video reflects that Mr. Taylor's legs and feet are all the way in the cell when the officers go to close the door, but that Mr. Taylor attempts to stick his foot out to block the door. One unidentified officer can be seen using his hands to push Mr. Taylor's feet back in the cell. *See* Range Video.

Mr. Taylor states that once the cell door was closed the defendants pulled his hands through the cuffport and began bending and twisting his hands and fingers. The video reflects

6

that the officers moved quickly to remove the restraints from Mr. Taylor's wrists. *See* Handheld and Range Video.

Mr. Taylor was provided with a mattress, a set of whites (boxer shorts, t-shirt, and socks), regular bedding (including at least one sheet and one wool blanket), and an alternative utensil (paper spoon) for use in eating his regular meal. *See* dkt. 78-1 at ¶ 11. Following Mr. Taylor's placement in the cell, there were no further incidents between Mr. Taylor and correctional staff. Dkt. 78-10 at p. 43.

Nurse Johnson made a note in Mr. Taylor's electronic medical records after her encounter with Mr. Taylor on May 16, 2018. Dkt. 72-1 at ¶ 5 (Johnson Affidavit); dkt. 72-2. Nurse Johnson completed a Body Sheet for the May 16, 2018, use of force. *Id.* This Body Sheet indicated that Mr. Taylor complained of neck pain but voiced no other complaints. Dkt. 72-2.

Since May 16, 2018, Mr. Taylor has sought medical treatment for two conditions, glaucoma and constipation, neither of which are related to his pending claims. Dkt. 72-5 at 23.

Nurse Johnson was unable to conduct a full physical assessment after Mr. Taylor was placed in his cell following the decontamination shower and incident between Mr. Taylor and the custody defendants. Dkt. 72-1 at ¶ 4. Nurse Johnson was unable to perform a physical assessment because of Mr. Taylor's actions and resistance to custody staff. Dkt. 72-2.

Warden Keith Butts did not directly supervise any staff actions related to Mr. Taylor on May 15, 2018. *See* dkt. 78-1 at ¶ 13.

Mr. Taylor received three separate conduct reports as a result of his interactions with custody defendants on May 16, 2018 — resisting, disorderly conduct, and refusing an order. Dkt. 1 at 14.

## **Analysis**

I. **Claims against Nurse Johnson**

Mr. Taylor alleges that Nurse Johnson failed to give him medical assistance after physical force was used on him. He further asserts that during the use of physical force, Nurse Johnson covered up another offender's window.

A. **Eighth Amendment Standard**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove that Nurse Johnson was deliberately indifferent, Mr. Taylor must establish that he suffered from "an objectively serious medical condition" and that the "defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) ("All of this is not to say, however, that every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim, for clearly that is not the case.").

The focal point of the dispute is whether the prison official knew of and disregarded an excessive risk to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties*, 836 F.3d at 728; *see Farmer*, 511 U.S. at 834. "An official is deliberately indifferent when he disregards a known condition that poses 'an excessive risk to inmate health

8

or safety.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999)). Mere negligence or malpractice is insufficient. *Id.*

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

Mr. Taylor argues that Nurse Johnson violated Indiana Department of Correction's policy by failing to examine him within one hour of the use of force. In addition, Mr. Taylor argues that Nurse Johnson reported that he reported no injuries, but this claim is false because she never assessed him. Dkt. 94 at p. 3.

The videos reflect that Mr. Taylor was verbally abusive and menacing towards everyone near him, and repeatedly tried to use physical force against the officers. Dkt. 75 and 86. As Nurse Johnson points out, the only time he was silent was when she asked him medical questions prior to his decontamination shower. The video further reflects that when Mr. Taylor was returned to Cell 502 and uncuffed that he was still resisting the officers and once in his cell continued to be verbally abusive and threatening. Under these conditions, Nurse Johnson acted reasonably in declining to enter Mr. Taylor's cell to conduct a full physical assessment. Despite Mr. Taylor's verbal requests for medical and statements that his neck and spine hurt, he displayed no outward manifestations of physical injury.

9

In addition, even if Nurse Johnson failed to comply with an Indiana Department of Correction policy, this fact is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

These circumstances reflect that Nurse Johnson was not deliberately indifferent to Mr. Taylor's serious medical needs. No reasonable jury could watch the videos of the incident and come to any other conclusion. Accordingly, Nurse Johnson is entitled to summary judgment in her favor.

### B. Window Cover-Up

There is a dispute between the parties regarding whether Nurse Johnson covered up another inmate's window so that he could not see what was occurring in the corridor. *See* dkt. 102. This dispute is not material, however, because it does not affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). Even if Nurse Johnson covered up another inmate's window during the time of the alleged battery by custody staff, this is not an action that violated Mr. Taylor's constitutional rights and no liability can be imposed based on such circumstances. Nurse Johnson is entitled to judgment in her favor as a matter of law on the claim that obscuring another inmate's view of events occurring in the corridor between cells violated Mr. Taylor's Eighth Amendment rights.

## II. Claims Against Custody Staff

### A. Toilet Paper

The defendants argue that Mr. Taylor's conditions of confinement claim based on a lack of toilet paper must be dismissed because Mr. Taylor was provided a reasonable amount of toilet paper.

In order to prevail on an Eighth Amendment claim related to his conditions of confinement, Mr. Taylor must establish that Defendant Storms imposed upon him conditions which denied him "the minimal civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Life necessities have been adjudicated to include hygiene items. *See Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994). There is no dispute that Mr. Taylor was regularly provided one roll of toilet paper per week. Under these circumstances, Mr. Taylor's Eighth Amendment rights were not violated by the alleged denial of additional state issued toilet paper on May 16, 2020. *See Dye v. Lomen*, 40 F. App'x 993, 995–96 (7th Cir. 2002) (failure to provide prisoner toilet paper over two or three days on two occasions did not rise to the level of a constitutional violation); *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir.1988) (concluding that deprivation of toilet paper for five days without physical harm did not rise to the level of a constitutional violation).

### B. Excessive Force

"The Eighth Amendment prohibits prison staff from subjecting inmates to excessive force without a legitimate penological purpose, [and] from deliberately failing to prevent other staff from using unlawful force . . . ." *Wilborn v. Ealey*, 881 F.3d 998, 1001 (7th Cir. 2018). Mr. Taylor argues in his response in opposition to summary judgment, dkt 98, that he was subjected

11

to excessive force. He claims he was sprayed with a chemical agent, denied the opportunity to decontaminate, and then poked in the eye, choked, stabbed in the neck and had his hair pulled. Mr. Taylor contends he was then thrown to the ground where Sgt. Saylor slammed his knee down on his head and neck. He states that he was unable to walk and dragged to a cell where he was striped and had his testicles grabbed. The officers then reportedly used the cell door as a weapon and slammed it on Mr. Taylor's feet and ankles. Officers purportedly kicked and stomped on Mr. Taylor while he laid on the ground in handcuffs. Dkt. 98 at p. 3–4.

The custody defendants argue that they are entitled to summary judgment because the designated evidence shows that Mr. Taylor refused to obey direct orders that created a need for the use of force to ensure the safety and order of the prison. Mr. Taylor acknowledges that the use of OC spray was justified and as Mr. Taylor continued to verbally threaten and physically resist the officers, the use of additional force became necessary. The custody defendants argue that the record establishes that only necessary force was utilized and, as such, Mr. Taylor's excessive force claim must fail as a matter of law. Dkt. 77.

The "core judicial inquiry," in an Eighth Amendment excessive force case, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, at 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm," the Supreme Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Factors relevant to the inquiry regarding whether the defendants' actions were done in a malicious and sadistic manner to cause harm "include the nature and extent of the harm, the need

12

for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994); *see also Hudson*, 503 U.S. at 7 (stating "[i]n determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response") (internal quotations omitted).

The officer's use of force on May 16, 2018, was necessary to gain Mr. Taylor's compliance, decontaminate him following the OC spray, and to safely place him in a cell. No reasonable jury could view the videos of this incident and come to any other conclusion. The officers did not strike or kick Mr. Taylor. They remained calm despite Mr. Taylor's repeated verbal threats using profane language. The use of force may have inflicted a degree of pain, but the force used was proportional to Mr. Taylor's conduct and necessary to gain his compliance. The video reflects that the officers tempered the severity of force used by moving slowly and waiting for Mr. Taylor to calm down and comply before taking additional actions to move him to Cell 502.

In addition, the officers were justified in perceiving Mr. Taylor's actions as a serious safety threat given his past assaults on staff. Any pain Mr. Taylor suffered was a direct result of his decision to refuse direct orders, threaten officers, and physically resist placement in the cell. Requiring a prisoner to comply with orders, prohibiting threats of physical violence and safely moving an inmate to a cell are all valid penological interests. "Jails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners." *Lewis v.*

*Downey*, 581 F.3d 467, 476 (7th Cir. 2009). The officers involved on May 16, 2018, all applied force in a good-faith effort to maintain or restore discipline and not in a malicious or sadistic manner.

Mr. Taylor's assertion that he did not physically resist is inconsistent with the video evidence and need not be accepted for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Unlike Mr. Taylor's other allegations of excessive force, Mr. Taylor's allegation that an officer grabbed his testicles while removing his clothing is not directly contradicted by the video evidence. The video makes clear that the officers struggled to remove Mr. Taylor's contaminated clothing while he resisted, but it does not show with any certainty that his testicles were not grabbed during this process. However, even if Mr. Taylor's testicles were grabbed, no reasonable jury could view the video of the incident and conclude that this action was taken to maliciously or sadistically to cause harm. Instead, given the officers attempts to remove Mr. Taylor's clothing while he was physically resisting, it is clear than any contact with Mr. Taylor's testicles was incidental to the valid objective of removing Mr. Taylor's clothing that was contaminated with OC spray prior to placing him in Cell 502. Mr. Taylor's other specifications of excessive force are all directly contradicted by the video evidence.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). That is the case here. No excessive force was deployed on May 16, 2018, and all defendants are entitled to summary judgment on the excessive force claim.

## **Conclusion**

For the reasons explained above, Nurse Johnson's motion for summary judgment, dkt. [70], is **GRANTED**, and Superintendent Keith Butts, Larry Storms, and S. Saylor, motion for summary judgment, dkt [76] is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 5/19/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN W TAYLOR, IV
167117
Wabash Valley Correctional Facility - 1111
PO Box 1111
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Jarod Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com